UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL WOODS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-01110-RLY-MJD |
| CAROLYN COLVIN Acting Commissioner of the social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Paul Woods ("Woods") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**.

## I. Procedural History

Woods filed an application for DIB and SSI on April 5, 2010, alleging an onset of disability as of January 29, 2010. Woods' applications were denied initially on July 22, 2010, and denied on reconsideration on September 8, 2010. Woods timely requested a hearing, which was held before Administrative Law Judge William M. Manico ("ALJ") on September 13, 2011. The ALJ rendered a decision on September 23, 2011, denying Woods' applications for DIB and

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

SSI. The Appeals Council denied Woods' request for review on December 4, 2012, making the ALJ's decision the final decision for purposes of judicial review. Woods filed his Complaint with this Court on July 11, 2013.

## II. Factual Background and Medical History

Woods, now thirty-nine years old, applied for DIB and SSI in 2010 based on nerve damage in his feet caused by frostbite. [R. at 180.] In his application, Woods indicated that he could not stand for more than five minutes, he could not lift more than twenty pounds, he could not walk more than two blocks, and he could not stand on his tip-toes. [R. at 210.]

On the evening of January 29, 2010, Woods was stranded in his pickup truck waiting for a tow truck to arrive and both of his feet were frostbitten. [R. at 52, 250.] That day, Woods went to the emergency room with complaints of foot pain. [R. at 240.] He was prescribed pain medication and released. [*Id.*] On February 12, 2010, Woods had a follow up appointment for frostbite on his feet. [R. at 245.] On March 2, 2010, Woods had another appointment where he complained of continued pain and swelling from the frostbite on his feet and he was referred to a podiatrist. [R. at 235.] Approximately two weeks later, on March 17, 2010, Woods had another appointment where he was diagnosed with "frostbite – neuropathy" and was given a referral to a neurological consult for both feet. [R. at 234.]

On April 5, 2010, Woods went to the emergency room again complaining of pain in his feet. [R. at 240.] He was prescribed more pain medication, referred for a neurology consult, and released. [*Id.*] On May 11, 2010, Woods once again visited a doctor complaining of pain and neuropathy in his feet. [R. at 284.] He could not spread his toes and he had decreased sensation in his feet. [*Id.*] He was diagnosed with neuropathy and plantar fasciitis and referred for a neurology consult. [*Id.*]

On May 18, 2010, Woods was evaluated by Dr. Boddu, consultative examiner, at the request of the State of Indiana Department of Family and Social Services Disability Determination Bureau ("state agency"). [R. at 250.] Woods complained of severe tingling and numbness, and stated that the pain worsened with prolonged activity. [*Id.*] Dr. Boddu observed that Woods could not stand on his toes, had an abnormal gait, and could not wiggle or flex his toes. [R. at 252.] Dr. Boddu also noted that Woods was scheduled for an EMG to test his neuropathy. [*Id.*] On June 11, 2010, Woods had an EMG that revealed "a very mild abnormality suggesting sensory neuropathy," with the examining physician finding that his sensory neuropathy was borderline low for his age. [R. at 258.]

On July 21, 2010, state agency reviewing physician, Dr. Bond, completed a Physical Residual Functional Capacity Form, in which he confirmed that Woods had neuropathy in his feet. [R. at 261.] Dr. Bond also found that Woods could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand or walk with normal breaks for six hours in an eight hour workday, sit with normal breaks for six hours in an eight hour workday, and push or pull the same amount that he could lift or carry. [R. at 262.] Approximately two months later, on September 3, 2010, Dr. Brill reviewed the evidence in Woods' file and affirmed Dr. Bond's opinion. [R. at 270.]

On September 2, 2010, Woods saw Dr. Bhatt for a neurology initial evaluation. [R. at 275.] Woods complained of throbbing and constant pain, weakness in both feet, and numbness in his toes. [*Id.*] Dr. Bhatt observed that Woods walked with an abnormal gait and could not wiggle his toes. [*Id.*] Woods also stated that he needed to wear shoes at all times and complained of foot pain while showering and trimming his toenails. [*Id.*] Dr. Bhatt also noted that Woods' pain medication did not offer much pain relief. [R. at 277.] Woods had a follow up

appointment with Dr. Bhatt on October 28, 2010, and continued to complain of pain, numbness, and weakness. [R. at 278.] Dr. Bhatt referred Woods to a podiatrist because "with regard to the EMG results, the objective results that we have are not matching up with subjective symptoms." [*Id.*]

On April 6, 2011, Woods first visited Dr. Zunica, a podiatrist, and was diagnosed with dry skin. [R. at 279-80.] Approximately two weeks later, on April 20, 2011, Woods again visited Dr. Zunica and was diagnosed with neuropathy. [*Id.*] On June 1, 2011, Dr. Zunica completed a medical statement and diagnosed Woods with neuropathy in both feet due to frostbite. [R. at 286.] Dr. Zunica also opined that Woods could only stand for 15 minutes, Woods would need to elevate his legs frequently, Woods was unable to walk on uneven surfaces, Woods suffered from severe pain, and Woods would miss more than four days of work per month because of his impairments. [R. at 287.]

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: 1) if the claimant is engaged in substantial gainful activity, he is not disabled; 2) if the claimant does not have a "severe" impairment that significantly limits his ability to perform basic work activities, he is not disabled; 3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the

claimant *is* disabled; 4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; 5) if the claimant can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Woods had not engaged in substantial gainful activity since January 29, 2010, the alleged onset date. [R. at 26.] At step two, the ALJ found that Woods had the following severe impairments: numbness and throbbing pain in the toes. [R. at 26.]

At step three, the ALJ determined that Woods did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

5

404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [R. at 27.]

After step three, but before step four, the ALJ determined that Woods had the residual functional capacity ("RFC") to perform work at the light level impeded by his limitations. [R. at 31.] Specifically, the ALJ determined that Woods had the following limitations:

> [C]laimant has the residual functional capacity to lift and/or carry (including upward pulling) 20 lbs; Frequently lift and/or carry (including upward pulling) 10 lbs (Based on claimant's testimony); Push and or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry; Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday and must be able to alternate sitting and standing at will; and claimant can Sit (with normal breaks) for a total of about 6 hours in an 8 hour workday. However, walking is limited to ten minutes at a time (based on claimant's testimony), stair climbing is limited to two flights at a time (claimant's testimony), and he must avoid walking on rough uneven surfaces. Claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, and he can frequently stoop, kneel, crouch, and crawl, and occasionally balance.

[R. at 27 (citations omitted).] At step four, because work as a laborer or as a construction worker exceeds Woods' RFC, the ALJ found that Woods is unable to perform his past relevant work. [R. at 30.] At step five, the ALJ determined that considering Woods' age, education, work experience, and RFC, there were jobs that existed in the national economy that Woods could perform, such as being a package line worker or a cashier. [R. at 31.] Therefore, the ALJ concluded that Woods was not disabled, as defined under the Act. [R. at 32.]

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Woods was not disabled. *Dixon*, 270 F.3d at 1176. Woods raises one argument as to why this Court should reverse the decision of the ALJ: he argues that the ALJ did not properly evaluate the opinion of his treating podiatrist, Dr. Zunica. [Dkt. 16 at 10.] In

6

response, the Commissioner calls into question whether Dr. Zunica should be considered a treating physician. [Dkt. 17 at 11-12.]

Plaintiff's argument, however, is made up of subparts that the Court will consider individually below. Specifically, Plaintiff argues that 1) the ALJ failed to build an accurate and logical bridge from the evidence to the conclusion because he gave no explanation why parts of Dr. Zunica's opinion were given substantive weight while others were given no weight [Dkt. 16 at 11]; 2) Dr. Zunica's opinion that Woods would miss more than four days of work per month was an opinion on functional limitation, not an opinion as to Woods' ultimate disability, and thus was inappropriately dismissed by the ALJ [Dkt. 16 at 13]; and 3) if Dr. Zunica is determined to be Woods' treating physician, the ALJ must properly consider the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2) and such consideration was not articulated in his decision [Dkt. 16 at 13-14].

## A. Accurate and Logical Bridge

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is 1) supported by medical findings; and 2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). However, if the ALJ decides that the treating physician should not be given controlling weight, the ALJ must consider a specific checklist of factors in making such a determination and provide good reasons for his decision. 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). A nontreating source, however, is not entitled to controlling weight. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).

The Plaintiff's sole argument is based on the ALJ's alleged inappropriate consideration of Dr. Zunica's opinion, which is predicated on the assumption that Dr. Zunica was Woods'

7

treating physician. [Dkt. 16 at 10.] The Commissioner faults the Plaintiff for "assum[ing] that the record showed the longitudinal treatment relationship between Dr. Zunica and Plaintiff that would establish Dr. Zunica as his treating podiatrist" [Dkt. 17 at 11] because the record "is not clear that Dr. Zunica was a treating source" [Dkt. 17 at 12].

The ALJ assigned little weight to Dr. Zunica's opinion, except that the ALJ gave "substantive weight" to the portion of the opinion that stated: "claimant [is] unable to walk a block at a reasonable pace on rough or uneven surfaces, he is not able to walk enough to shop or bank, and he is unable to climb a few steps at a reasonable pace with the use of a single handrail." [R. at 29-30.] It is not clear whether the ALJ considered Dr. Zunica to be a "treating physician." However, assuming the ALJ believed Dr. Zunica to be the treating physician, the ALJ found that Dr. Zunica's opinion was not entitled to controlling weight because it was not supported by medical findings nor was it consistent with substantial evidence in the record. Specifically, the ALJ found that:

> [C]laimant's allegations of pain are not consistent with the objective findings. He complains of throbbing pain, yet EMG findings showed very mild sensory neuropathy. His sensory response was borderline low – again inconsistent with throbbing pain. Indeed, there is no evidence to suggest claimant would miss four days of work per month. Claimant reported on his function report he stopped work due to lack of work and because he was going to school full time. Accordingly, the undersigned finds that the objective evidence fails to support Dr. Zuniar's [sic] findings, and assigns him little weight.

[R. at 29.]

Plaintiff argues that the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion because "[t]he ALJ gives no explanation why part of [Dr. Zunica's] opinion deserves little weight but other parts are to be adopted into the RFC." [Dkt. 16 at 11.] However, the ALJ properly articulated his reasons for assigning little weight to a portion of Dr. Zunica's opinion in the block quote above by examining the evidence and concluding, "objective

8

evidence fails to support Dr. Zuniar's [sic] findings." [R. at 29.] While the ALJ did not specifically state why he accorded substantive weight to a portion of Dr. Zunica's opinion, it is safe to assume that the ALJ found that this portion was supported by medical findings and consistent with substantial evidence in the record. Plaintiff also does not dispute the ALJ's adoption of that portion of Dr. Zunica's opinion. Because Plaintiff cites no regulation or precedent that would prohibit the ALJ from assigning different weights to different parts of a doctor's opinion, and is arguing only that the ALJ did not provide adequate reasoning for assigning different weights, the Court finds this argument unpersuasive. The ALJ provided a logical bridge from the evidence to his conclusion to assign little weight to the disputed portion of Dr. Zunica's opinion.

Plaintiff also argues that the ALJ should have evaluated Dr. Zunica's opinion under Social Security Ruling ("SSR") 96-2p. [Dkt 16 at 12.] Plaintiff correctly identifies the standard by stating that the ALJ must give controlling weight to the treating physician if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence. SSR 96-2p; *Dominguese v. Masanari*, 172 F. Supp. 2d 1087, 1100 (E.D. Wis. 2001). In the instant case, the ALJ found that the clinical and laboratory diagnostic techniques did not support part of Dr. Zunica's opinion. Specifically, the ALJ referenced that the allegations of pain were inconsistent with both the EMG findings and Dr. Bhatt's concurrence on the issue. [R. at 29-30.] Thus, the ALJ properly complied with SSR 96-2p.

## B. Findings Reserved for the Commissioner

Plaintiff next challenges the ALJ's statement regarding issues reserved for the Commissioner. With regard to Dr. Zunica's opinion that Woods would miss more than four

9

workdays per month, the ALJ stated: "a claimant's disability finding is not a medical issue, but is an administrative finding that is reserved to the Commissioner. Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician." [R. at 29.] If this was the end of the ALJ's analysis of Dr. Zunica's opinion, this Court would reverse the decision. The Court agrees with Plaintiff that Dr. Zunica's opinion here is an opinion on Plaintiff's functional limitations and does not infringe on an issue reserved to the Commissioner. Courts have repeatedly considered missed workday limitations outlined by physicians as medical source statements. *E.g. Jones v. Colvin*, 1:12-cv-453-PPS, 2014 WL 657583, at *2 (N.D. Ind. Feb. 19, 2014); *Hennenfent v. Astrue*, 10-cv-1422, 2011 WL 5238922, at *6 (C.D. Ill. Nov. 1, 2011). Even in cases when the vocational expert ("VE") testifies that missed workdays will result in no work available, and a physician opines that a patient will miss at least as many workdays as the VE states would preclude them from the available work, the Seventh Circuit has found that such testimony from the physician is medical opinion testimony that must be considered. *See Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005) (finding that a physician's conclusion regarding missed workdays was unsupported when the ALJ weighed it against the relevant medical and other evidence).

While the ALJ did err by stating that missing four workdays was a finding reserved for the Commissioner, the error is harmless as the ALJ nonetheless gave other "good reasons" for assigning little weight to Dr. Zunica's opinion as discussed above. 20 C.F.R. § 404.1527(c)(2); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)) ("But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

10

## C. Checklist of Factors

Finally, Plaintiff argues that the ALJ failed to address the checklist of factors outlined in 20 C.F.R. § 404.1527(c). The Seventh Circuit has stated that "in the end, it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir.1996) (quoting *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir.1992)) (quotation marks and ellipsis omitted). An ALJ is free to deny a treating physician's opinion controlling weight and afford it less evidentiary weight. *Elder*, 529 F.3d at 415. However, the regulations state that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it] give[s] [the patient's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). There is a checklist of factors that an ALJ must consider when determining the good reasons to assign less weight to a treating physician's opinion: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2).

This argument is a red herring. While Plaintiff is correct that the ALJ's opinion is deficient in articulating the checklist of factors necessary to afford less than controlling weight to the opinions of a treating physician, the only opinion of Dr. Zunica that Plaintiff puts at issue is the one discussed above. As noted above, the ALJ must give controlling weight to the treating physician **if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence.** SSR 96-

11

2p (emphasis added); *Dominguese*, 172 F. Supp. 2d at 1100. In this case, even if Dr. Zunica's opinions were given controlling weight, the ALJ was free to disregard the only opinions put at issue by Plaintiff on appeal because, as discussed above, the ALJ articulated in detail his reasons for finding that those opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence.

Plaintiff has not demonstrated that the outcome would change if the factors from the checklist were addressed. Plaintiff does not identify which factors from the checklist he believes were inappropriately considered by the ALJ, nor does Plaintiff demonstrate how any of the factors would weigh in his favor. More importantly, Plaintiff has not pointed to any medical evidence that supports Dr. Zunica's opinion other than the opinion itself, whereas the ALJ's decision demonstrated that Dr. Zunica's opinion was not supported by medical findings or other evidence in the record. The ALJ plainly articulated his reasons for not considering the portions of Dr. Zunica's opinions that are at issue on appeal, so any failure by the ALJ to articulate more general reasons for affording Dr. Zunica's opinions less weight are irrelevant to the appeal and, therefore, are not error.

## VI. Conclusion

For the aforementioned reasons, the Court should find that substantial evidence supports the ALJ's determination that Woods is not disabled. The Commissioner's decision should therefore be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 07/03/2014

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov